## HALL *v.* WELLMAN LUMBER COMPANY.

### Opinion delivered April 16, 1906.

1. INJUNCTION—CUTTING TIMBER—GENERAL RULE.—The general rule is that equity will not grant relief by injunction against the cutting of timber unless it is shown that an irreparable injury to the property will result, or that the destruction of the timber will render the freehold less susceptible of enjoyment, or that the acts of trespass are of a nature to constitute a nuisance, or that the defendant is insolvent. (Page 411.)

2. SAME—ESTOPPEL.—Equity will enjoin the cutting of timber where plaintiff was led, by defendant's conduct in apparently abandoning a claim.thereto, to erect a sawmill on or near.the land for the purpose of cutting the timber, and where reimbursement to the extent of the market value of the timber would not fairly compensate for the injury which will be done by the threatened trespass. (Page 412.)

3. TIMBER—CONTRACT FOR REMOVAL—EFFECT.—A consent decree which either conveys the timber on the land or confers the privilege of cutting and removing it contemplates that the timber shall be removed within a reasonable time. (Page 413.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Judge; affirmed.

#### STATEMENT BY THE COURT.

The Wellman Lumber Company brought this suit in equity to restrain the defendants, Joseph Hall and J. N. Albright, from cutting and removing the cypress timber owned by plaintiff from certain lands in Jefferson County.

The lands were formerly owned by Abraham Rhea, J. S. Anderson and Leonidas Bills; and W. H. Langford is the owner thereof under mesne conveyances from those parties. Plaintiff claims title to the timber under a conveyance from Langford. Defendants claim the right to cut the timber under a deed executed to them by S. G. Smith and C. S. Sadler, dated May 16, 1903, conveying the cypress timber on said lands. Title to the timber in S. G. Smith is asserted as follows:

That said lands were forfeited to the State for nonpayment of the taxes for the year 1892, and that Smith purchased the same from the Commissioner of State Lands. Rhea and others, the original owners, brought suit against Smith in the Jefferson Chancery Court to cancel said tax forfeiture and the State's deed

to Smith, on the ground that the tax sale was illegal and void for sundry reasons stated, and on March 16, 1897, a consent decree was entered in said suit declaring the tax sale and the State's deed to Smith to be void, and canceling the same.

The decree contained further provisions as follows: "It is further decreed by the court that the defendants take nothing for the redemption of the said lands, and that the plaintiffs waive all rights to recover any compensation or damages for any trespass the defendant may have committed on said lands. It is further adjudged and decreed that said defendant, S. G. Smith, shall have the right to be and remain in possession of that portion of the said lands which is now in cultivation and under fence for the period of three years, commencing on the first day of January, 1897, and ending on the 1st day of January, 1900, the said defendant having already paid to the plaintiffs the sum of $325 for the use and occupancy thereof. It is further decreed that the said S. G. Smith shall have the right and privilege to occupy free of rent the ground upon which his mill is now situated, together with the tenement houses and stables and lots pertaining to said mill, until such time as the cypress timber on said lands shall be sawed and marketed, and shall have the right, at any time, to remove from the said lands the said mill, together with all the machinery and attachments thereunto in any manner belonging to said mill, and shall have free ingress and egress over the said land for the purpose of removing the same at such time as he may see proper. It is further decreed that the said defendant, S. G. Smith, shall pay to the plaintiffs the price of fifty cents per thousand feet according to the Scribner's scale for cypress that he may cut or use from the said lands at his mill or otherwise from and after the date of this decree, and that he shall have the right of ingress and egress over the said lands necessary for the purpose of bringing the timber to the mill and hauling shingles and lumber away from it, and said defendant shall keep an accurate account of all the timber cut from the said lands, and scale the same, and settle for and pay for the actual amount of said timber cut from the lands, every three months, and shall make all necessary repairs and improvements on the said lands during the said three years at his own expense."

The plaintiff in its complaint asserted that under the terms

of said decree the right of Smith and those claiming under him to remain in possession of the land and cut timber expired on January 1, 1900, and it alleged that during the year 1900 Smith ceased to cut timber and removed his mill from the land. It further alleged that thereafter the plaintiff purchased said lands, and "at great expense erected a mill on or near said land for the purpose of cutting said timber, believing it had a right and title to said timber, and that the rights of Smith had expired with the said three years, and that he claimed no further right to said timber and no further right to cut it, and said Smith knew of the expenditure of plaintiffs in its purchase of the timber and erection of the mill and preparations to cut said timber, and stood by and made no claim to it while plaintiff was making said expenditures, and plaintiff states that said expenditures would not have been made had said Smith then claimed said timber, and plaintiff alleges and submits that said Smith and the defendants claiming under him are now estopped to claim said timber, even if his rights were not terminated by the expiration of said three years and by the removal of his mill and ceasing to cut timber."

It is also alleged that three years were, under the circumstances, a reasonable time within which the timber could have been removed.

At the commencement of the suit the chancellor granted a temporary injunction, restraining the defendants, their agents and employees, from cutting or removing any timber from said lands; and on final hearing of the cause the court granted the relief prayed for and made the injunction perpetual.

The defendants appealed to this court.

*Taylor & Jones,* for appellant.

1. The appellee, in purchasing, was bound to take notice of the rights of appellants as to the timber, and acquired no interest that could be set up to defeat or impair defendant's rights to the use of the land needed, or to cut and take the timber, as provided in the decree.   57 Ark. 231; 12 Ark. 564; 31 Ark. 491; 36 Ark. 217; 69 Ark. 442.

2. In the absence of allegations (and of proof to sustain the same) of irreparable injury to the freehold, continuing trespass or multiplicity of suits to redress injury, and of insolvency,

appellee had its. complete remedy at law.  33 Ark. 637.  And injunction did not lie.  67 Ark. 413 ; 75 Ark. 286.

*Crawford & Gantt,* for appellee.

1.  The provision in the decree for cutting cypress timber was by its terms a mere privilege or license granted to Smith. Plaintiff could not hold him to cut the timber, but only to pay for such as he did cut—a privilege which he could abandon when he chose, and did abandon when he removed his mill.

If the decree by its terms does not establish that it was the intention of the parties to limit this privilege to three years, then the law fixes a reasonable time.  11 Am. Dig. Cent. Ed. Col. 1043, § 945 ; *Ib.* Col. 1045, § 947 ; 65 Ark. 51 ; 2 Parsons on Cont. 661, *et seq.* ; 5 Col. App. 167 ; 38 Pac. 390 ; 56 Ky. 483 ; 8 N. E. 767 ; 2 Chit. Cont., 14 Am. Ed. 1062.

2.  If Smith's rights had not ceased by lapse of time named in the decree,. or by lapse of a reasonable time, the circumstances show an abandonment of his rights.  Abandonment may be shown by the conduct of the parties and circumstances.  71 S. W. (Mo.) 1068, and cases cited ; 21 S. W. 944 ; 7 S. W. 467.

3.  Defendants and those under whom they claim, having by their conduct induced appellee to build its mill and construct its railroad for the purpose of cutting and removing the timber, asserting no claim to it in the meantime, are estopped now from setting up any further claim.  1 J. C. R. 354 ; 24 Ark. 371 ; 10 Ark. 211 ; 35 Ark. 376 ; *Ib.* 293 ; 37 Ark. 47 ; 50 Ark. 427 ; 52 Ark. 207.

4.  Inasmuch as the only damages recoverable in an action at law would be the fair market value of the timber cut, the remedy at law would have been inadequate.

The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances.  130 U. S. 514.  Injunction is the only adequate remedy under the state of facts alleged and proved in this case.  10 So. 848 ; High on Inj. § 724 ; 33 L. J. Ch. 451.

McCULLOCH, J., (after stating the facts.)  1.  It has been held by this court in a number of cases that equity will not grant relief by injunction against the cutting of timber unless it be

shown that an irreparable injury to the property will result, that the destruction of the timber will render the freehold less susceptible of enjoyment, or the acts of trespass are of a nature to constitute a nuisance, or unless it is obvious that the defendant is insolvent, and can not be compelled to respond in damages. *Ellsworth* v. *Hale*, 33 Ark. 637; *Myers* v. *Hawkins,* 67 Ark. 413; *Western Tie & Timber Co.* v. *Newport Land Co.*, 75 Ark. 286; *Haggart* v. *Chapman & Dewey Land Co.;* 77 Ark. 527. Appellants invoke this doctrine against the decree in this case. There may, however, be other grounds existent for the exercise of jurisdiction to grant the relief, and we are of the opinion that they sufficiently appear in this case.

This is not a suit by a landowner to restrain a trespass or trespasser upon the land. It is a controversy between rival claimants to the title to the timber, and the plaintiff alleges and proves, not only that defendants have no valid and subsisting right to cut the timber, but that, by abandoning their previously asserted claim to the timber, and by remaining silent and failing to assert a claim thereto, they induced the plaintiff to purchase the timber from the owner of the land, and to erect, at great expense, a mill on or near the land to manufacture the timber into lumber. Plaintiff also shows that recovery of damages at law to the extent of the market value of the timber would not, under those circumstances, afford full compensation for the injury, and that there is, therefore, no adequate remedy at law. We think that contention is sound, and that the distinction is plain between this case and those cited above holding that equity jurisdiction will not be exercised to restrain a mere trespass.

It is unnecessary in this case to go to the extent of holding, as in the case of *Wadsworth* v. *Goree,* (Ala.), 10 So. 848, cited by counsel, that, merely because the plaintiff has purchased the timber and erected a sawmill in the vicinity of the land on which it is situate for the purpose of sawing it into lumber, the jurisdiction of the court of equity may be invoked to enjoin other persons from trespassing by cutting the timber; but when to this element is superadded the other found in this case that the defendants, or one under whom they hold, have, by their conduct in failing to reassert an apparently abandoned claim, induced the plaintiff to erect a mill at great expense, and when it is shown that reim-

bursement to the extent of the market value of the timber would not fairly compensate for the injury which will be done by the threatened trespass, we think the jurisdiction of a court of equity to prevent it by injunction is plain. The loss, is, under those circumstances, irreparable, and the remedy at law for recovery of damages is inadequate.

2. Appellants contend that, under the terms of the consent decree, there being no limit of time fixed within which the timber should be removed, Smith and his grantees could remove it at his or their own pleasure or convenience. On the other hand, appellee contends that the right of Smith and his grantees to cut timber expired January 1, 1900, the time limit of his occupancy of the lands in cultivation; or, that, being without time limit fixed by the decree, the law implies the right to remove the timber within a reasonable time.

The recent decision of this court in the case of *Liston* v. *Chapman & Dewey Land Co.,* 77 Ark. 116, settles the question in favor of the latter contention of appellee.

The court there said: "In the absence of something in the instrument itself, or in the proof *aliunde,* showing a contrary intention, a deed to merchantable timber which specifies no time for its removal conveys a terminable estate in the timber, which ends when a reasonable time for the removal of such timber, after the execution of the deed, has expired." The authorities on both sides of this question are fully collected in that opinion, and need not be cited or discussed again. The same rule of construction applies to a decree of court, especially a consent decree, which is a contract as well as a judicial decree. We need not determine whether the decree passed the title to the timber to Smith, or whether it operated merely as a privilege or license to cut the timber, as contended by counsel for appellee. The rule would, in either event, exclude the right of the grantee or licensee to cut and remove the timber after a reasonable time had elapsed.

The evidence in this case establishes the fact that the timber could, with reasonable diligence, have been removed long before appellants asserted their right to cut it, and no excuse is given why it was not cut and removed earlier. The chancellor found that a reasonable time had long since elapsed, and we see no ground upon which his findings should be disturbed.

Other grounds are assigned by counsel for appellee why the decree of the chancellor should be sustained; but as those already discussed are decisive of the case, we need not pass upon others.

Decree affirmed.