COMER *v*. WOODS.

4-7926                                     195 S. W. 2d 542

Opinion delivered July 8, 1946.

*John D. Eldridge, Jr.,* for appellant.

*Ross Mathis,* for appellee.

HOLT, J. The present action was begun in the Woodruff chancery court January 19, 1946, by R. M. Comer, Sr., against Walter E. Woods, for an injunction to restrain Woods from interfering with Comer's possession of an eighty acre farm. R. M. Comer, Sr., rented the land under a written lease from Mrs. Nannie T. Woods, mother of appellee, Walter Woods, for a term of five

years from August 6, 1942, to December 31, 1947. Mrs. Woods died September 25, 1943, and her son, appellee, succeeded to her rights. R. M. Comer, Sr., died January 25, 1946, and the cause was revived in the name of appellant, Rufus M. Comer, Jr., individually, and as administrator of Mr. Comer, Sr.'s, estate.

The substance of appellant's complaint was that following Mrs. Woods' death, her son, Walter, succeeded to her rights under the lease and collected the rentals from the land for 1943, 1944 and 1945; and (quoting from appellant's abstract) "that R. M. Comer, during 1945, subrented said lands, on a share-crop basis to Joe Bishop who was to move sometime during the month of January, 1946, and Comer intended to move another sharecropper, Dave K. Humphrey, on the land to replace Bishop. Bishop moved from the rented land on January 19, 1946, and Humphrey moved his furniture to the main house on the rented land the same day, but found that defendant, Walter E. Woods (appellee), had moved into the house immediately after Bishop had left. Defendant (appellee) and his wife refused to permit Humphrey, the agent and sharecropper of Comer, to enter the premises.

"Plaintiff, at the time of this interference, had his workstock on the rented land at the main house and all farm equipment necessary to work the land in 1946. He had a crib full of feed for feeding the stock during 1946. Humphrey, his agent and sharecropper, had moved a load of firewood to the house on January 12, 1946, preparatory to moving in. The complaint further states that plaintiff had made a binding trade with Dave K. Humphrey to move into the main house on the rented land and Humphrey had given up possession of the house where he had formerly lived; that the defendant (Woods) has taken the law into his own hands and by force deprived him of the rented premises without ever having complained or expressed any dissatisfaction and without giving any notice.

"That Humphrey has no place to live; that plaintiff does not have an adequate and sufficient remedy at law

and is about to suffer irreparable injury; and that defendant is insolvent; that the court grant plaintiff a permanent, mandatory injunction restraining the defendant from interfering with his possession of the rented premises and requiring defendant to remove his family and belongings from said premises; that the court grant an immediate hearing and give him a temporary order to be made permanent as provided by law.''

Appellees answered with a general denial and, in addition, alleged that appellee, Woods, and his tenant were in possession of and living on the farm here involved at the time the present suit was filed; that appellant had breached the lease contract; that a court of equity was without jurisdiction to give to appellant the injunctive relief prayed; that appellant's remedy at law was adequate and complete, and prayed that "the complaint be dismissed or transferred to circuit court and that defendant (appellee) have judgment against the estate of R. M. Comer in the amount of $500.''

Upon a trial, the substance of the trial court's findings and decree is stated by appellant as follows: "The court finds that this is an action to enjoin and restrain defendants from interfering with the property and possession of the plaintiffs to 80 acres, more or less (describing it). The court finds that the suit was brought by R. M. Comer, Sr., who died during its pendency, and it was properly revived by Rufus M. Comer, Jr. The court finds that the facts before it do not warrant injunctive relief. The court accordingly dismissed the plaintiff's suit for an injunction, without prejudice to his right to bring suit in the circuit court of Woodruff county, Arkansas, for possession and for damages for detention, and without prejudice to his bringing suit for an accounting. The court further orders that the testimony of the witnesses be transcribed and filed in this cause as depositions and as a part of the record herein.''

This appeal followed.

Appellant says the primary question presented is: "Do the facts in this case warrant the jurisdiction of

chancery court or must the plaintiff for relief seek the slow and cumbersome processes of a possessory action in law court?''

The title to the eighty acre tract of land in question is not in dispute. Appellee, Walter Woods, was the owner and landlord, and in actual possession when the present suit was filed. Appellant, as tenant, under a written lease agreement, which had approximately two years to run at the time appellee, Woods, took possession, seeks to be restored to the possession of the leased property and for relief in a court of equity. The trial court, as indicated, found that his remedy was full and complete at law, and we think this finding was correct.

The rule is well settled in this State and elsewhere that ''a court of equity will not interfere by injunction to restrain a mere trespass, in the absence of the elements of irreparable injury, unless the trespasser is insolvent, and cannot be made to respond in damages, or unless the remedy at law is inadequate.'' *Boswell* v. *Jordan,* 112 Ark. 159, 165 S. W. 295 (headnote 3).

While in the instant case, appellant alleged the insolvency of the appellee, we think the preponderance of the testimony shows no insolvency. We find no evidence of an involved, or complicated accounting.

In 28 American Jurisprudence, p. 199, § 5, the text writer says: ''Injunction is primarily a preventive remedy. Its province is to afford relief against future acts which are against equity and good conscience, and to keep or preserve a thing *in statu quo,* rather than to remedy what is past or to punish for wrongful acts already committed. Generally speaking, rights already lost and wrongs already perpetrated cannot be corrected by injunction.'' In support of the text is cited the case of *White* v. *Sparkill Realty Corp.,* 280 U. S. 500, 74 L. Ed. 578, 50 S. Ct. 186. In that case, the Supreme Court of the United States quoted with approval from *Lacassagne* v. *Chapuis,* 144 U. S. 119, 124, 36 L. Ed. 368, 370, 12 Sup. Ct. Rep. 659: ''The plaintiff was out of posses-

sion when he instituted this suit; and by the prayer of this bill he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore the plaintiff, by injunction, to rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another. 1 High, Inj., 2d Ed., § 355.''

We conclude, therefore, as has been indicated, that appellant has a complete and adequate remedy in an action at law.

The decree is affirmed.